IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**KIMBERLY C.,**

    **Plaintiff,**

v.

    **Civil Action 2:20-cv-6059**
    **Judge Michael H. Watson**
    **Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Kimberly C., brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for social security disability insurance benefits and supplemental security income.  This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 18), the Commissioner's Memorandum in Opposition (ECF No. 21), Plaintiff's Reply (ECF No. 26), and the administrative record (ECF No. 12).  For the reasons that follow, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner of Social Security's nondisability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

### I.  BACKGROUND

This is not Plaintiff's first application for benefits.  On December 19, 2011, Plaintiff protectively filed applications for period of disability, disability insurance benefits, and supplemental security income, alleging disability beginning November 9, 2011.  (R. at 82.)  Those applications were denied initially on May 14, 2012, and upon reconsideration on July 24,

2012. (*Id.*) Thereafter, Plaintiff filed a written request for a hearing on August 6, 2012. (*Id.*) Plaintiff then appeared and testified at an administrative hearing on February 20, 2013. (*Id.*) Also appearing at that hearing were a medical expert and a vocational expert. (*Id.*) On March 7, 2013, administrative law judge Patricia D. Yonushonis (the "2013 ALJ") issued a decision finding that Plaintiff had not been disabled within the meaning of the Social Security Act from November 9, 2011 through the date of the decision. (R. at 92.)

Then, in December 2018, Plaintiff protectively filed her current applications for disability insurance benefits and supplemental security income, alleging that she has been disabled since October 19, 2018, due to having both hips replaced, chronic headaches, rheumatoid arthritis especially in her feet and hands, hypothyroidism, chronic back issues, leg issues, depression, and anxiety. (R. at 346-56, 407.) Plaintiff's current applications were denied, initially in May 2019 and then upon reconsideration in July 2019. (R. at 98-251.) Plaintiff then sought a *de novo* hearing before an administrative law judge. (R. at 281-83.) Plaintiff, who was represented by counsel, appeared and testified at a telephonic administrative hearing held on June 5, 2020. (R. at 41-78.) A vocational expert (the "2020 VE") also appeared and testified. (*Id.*) On July 21, 2020, administrative law judge Deborah F. Sanders ("ALJ Sanders") then issued a decision finding that Plaintiff had not been disabled within the meaning of the Social Security Act from October 19, 2018 through the date of the decision. (R. at 7-35.) The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1-6.)

On November 25, 2020, Plaintiff timely filed the subject action. (ECF No. 1.) This matter is properly before this Court for review.

## II. HEARING TESTIMONY

In the subject decision, ALJ Sanders summarized Plaintiff's statements to the Agency and her relevant hearing testimony as follows:

> [Plaintiff] reported she was unable to engage in work related activities due to a history of hip replacement; thyroid issues; back problems; and mental health conditions, including depression and anxiety. [Plaintiff] reported depressed moods with crying spells. She reported issues remembering instructions, problems focusing, and worrying about things. [Plaintiff] reported pain in her hands and feet and cited irregular gait due to hip symptoms. [Plaintiff] reported limited ability to sit, stand, and walk, as well as limited ability to lift and carry. [Plaintiff] also reported at times her leg gives out on her when walking.
>
> [Plaintiff] testified that she has a high school education. She reviewed and described her past employment. [Plaintiff] stated she was working at the Kroger bakery, but she was laid off due to the Coronavirus. [Plaintiff] reported that she has no problems on the job at the Water's Edge Café and works part time, a few hours per day. [Plaintiff] reported her work there is accommodated, as she is allowed to take a few minutes more to sit down and she leaves early sometimes due to her symptoms. [Plaintiff] testified that she has pain in her lower back, hip, and thighs in both of her legs. She reported continuous pain. She explained that if standing too long her legs give out and they will buckle. However, she noted that her legs can buckle at any time. [Plaintiff] reported falling twice a week, but reported she has never fallen while working. [Plaintiff] stated that she gets dressed on her own, cooks her own food, and performs her own household chores within limits. [Plaintiff] stated she goes to the grocery store, but parks closer to the store. She stated that she lays down after work.
>
> [Plaintiff] testified that she has time limits she can sit, stand, and walk.

(R. at 20 (internal citations omitted).)

## III. ADMINISTRATIVE DECISIONS

### A. First Administrative Decision (March 7, 2013)

On March 7, 2013, the 2013 ALJ issued her decision. (R. at 79-97.) The 2013 ALJ found that Plaintiff met the insured status requirements of the Social Security Act through June

30, 2016. (R. at 84.) At step one of the sequential evaluation process,[1] the 2013 ALJ found that Plaintiff had not engaged in substantially gainful activity since November 9, 2011, the alleged onset date. (*Id.*) The 2013 ALJ found that Plaintiff had the severe impairments of degenerative joint disease of the hips, status post bilateral total hip replacements; left carpal tunnel syndrome; depressive disorder, not otherwise specified; and marijuana abuse. (*Id.*) The 2013 ALJ further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 85.) Before proceeding to step four, the 2013 ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, [ALJ Yonushonis] finds that the [Plaintiff] has the residual functional capacity to described by the consulting physician in Exhibit 5F, pp. 1-6: sit 3 hours at a time for a total of 8 hours; stand 20 minutes at a time, 1 hour total in an 8 hour workday; walk 30 minutes at a time, 1 hour total in an 8 hour workday; frequently push/pull bilaterally; occasionally operate foot controls bilaterally, climb stairs/ramps, and crouch; never climb ladders/scaffolds/ropes or work at unprotected heights; and occasionally work around vibrations. With regard to the mental residual functional capacity,

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

4

> [**Footnote**: I find that [Plaintiff] has had these mental limits when abusing illegal substances, as she was using throughout the record and has even admitted to using marijuana daily.] [The ALJ] find[s] that [Plaintiff] is limited to understanding, remembering, and carrying out simple and complex instructions, maintaining concentration, persistence and pace for simple and complex tasks, with occasional superficial contact with others, and with no high production quotas or fast-paced work.

(R. at 87.)

At step four of the sequential process, the 2013 ALJ determined that Plaintiff was unable to perform her past relevant work as an office clerk, a semi-skilled, light exertion job; or a glass installer, classified as semi-skilled medium exertional job. (R. at 90-91.) Relying on the VE's testimony, at Step 5, the 2013 ALJ found that Plaintiff could perform other jobs that exist in significant numbers in the national economy. (R. at 91-92.) She therefore concluded that Plaintiff was not disabled under the Social Security Act at any time since November 9, 2011, the alleged onset date. (R. at 92.)

**B.  Second Administrative Decision (July 21, 2020)**

On July 21, 2020, ALJ Sanders issued the subject decision from which this action arises. (R. at 7-35.) First, ALJ Sanders found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2024. (R. at 15.) ALJ Sanders then found that Plaintiff had not engaged in substantially gainful activity since October 19, 2018, the alleged onset date. (*Id.*) ALJ Sanders also found that Plaintiff had the severe impairments of degenerative disc and joint disease of the spine; degenerative joint disease of the hips, status post bilateral hip replacements; a depressive disorder; and an anxiety disorder. (R. at 16.) She further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 18.)

5

>Before proceeding to step four, ALJ Sanders set forth Plaintiff's RFC as follows:
>
>After careful consideration of the entire record, the undersigned finds that [Plaintiff] has the residual functional capacity to sit for up to 8 hours during an 8-hour workday, three hours at a time. [Plaintiff] could stand/walk for 2 hours during an 8- hour workday, standing no more than 20 minutes at a time and walking no more than 30 minutes at a time. She could frequently push/pull bilaterally. [Plaintiff] could occasionally operate foot controls bilaterally. She could occasionally climb ramps and stairs. She could occasionally crouch. [Plaintiff] would be precluded from climbing ladders, ropes, and scaffolds. She should avoid unprotected heights. She could occasionally work around vibrations. [Plaintiff] could understand both simple and complex instructions. She could perform both simple and complex tasks that did not require fast production rate pace and did not require strict or high production quotas.

(R. at 19.)

ALJ Sanders noted that in reaching her findings, she considered the 2013 ALJ's decision, and indicated that when adjudicating a subsequent disability claim involving an unadjudicated period, the Agency considers the facts and issues *de novo* in determining disability with respect to the unadjudicated period. (R. at 13-15.) ALJ Sanders then discussed the 2013 ALJ's decision as follows:

>[T]here is new and material evidence regarding [Plaintiff's] conditions and work-related abilities (See evidence dated after the date of [Plaintiff's] prior March 2013 decision). The undersigned has found since the time of the prior ALJ decision there have been some changes in [Plaintiff's] conditions and there have also been some changes in the Social Security rules and regulations and as such, the provisions of Drummond do not apply. The undersigned finds due to the new and material evidence of record the prior ALJ residual functional capacity was not adopted verbatim. The undersigned finds [Plaintiff] continued to evidence physical problems from her bilateral hip degeneration and spinal degeneration, causing exertion, postural, and environmental limits. However, the undersigned has not adopted the time limits associated with the exertional activities verbatim, finding [Plaintiff's] reported work activity and required work tasks, as well as the objective evidence discussed within the decision below supported some greater physical ability. Thus, there was not a verbatim adoption of the prior physical residual functional capacity under Drummond. The undersigned finds the changes in the mental rules and regulations required an updated analysis of [Plaintiff's] mental conditions. In addition to changes in the rules and regulations, the undersigned finds the record supports [Plaintiff] evidenced less significant social limitations

6

> associated with her depressive condition. Therefore, the undersigned has not verbatim adopted the prior mental residual functional capacity under <u>Drummond</u>. (<u>Drummond v. Commissioner of Social Security</u>, 126 F.3d 837 (6th Cir. 1997). In terms of Dennard, the undersigned elicited testimony from a second vocational expert to confirm the classification of [Plaintiff's] previously classified past relevant work and classify any new relevant work. The current vocational expert disagreed with the classification of the prior position of office clerk, finding the position was better classified as a service clerk. The current vocational expert also cited the prior DOT Code used for the classification of glass installer was incorrect and recited the correct DOT Code associated with the position. The undersigned has not accepted the prior vocational expert testimony and past work finding under <u>Dennard</u>. (<u>Dennard v. Secretary of Health and Human Services</u>, 907 F.2d 598 (6th Cir. 1990). Rather, the undersigned has accepted the testimony of the subsequent vocational expert who had access to additional evidence, including additional claimant testimony. It should be noted the undersigned also appropriately elicited from the vocational expert testimony regarding [Plaintiff's] ability to perform any of the cited/classified past work given the newly assessed residual functional capacity, considering the new and material evidence of record. Thus, the ALJ found the new and material evidence does warrant a deviation from the prior ALJ decision.

(R. at 14-15 (underline in original).)

ALJ Sanders determined that Plaintiff's past relevant work includes a service clerk, classified as semi-skilled, sedentary exertion job; a glass installer, classified as semi-skilled medium exertional job; and a sales attendant, classified as unskilled, light exertional job. (R. at 29.) At step four, ALJ Sanders found that Plaintiff can perform her past relevant work as a service clerk as the position was both actually and generally performed. (*Id.*) ALJ Sanders therefore concluded that Plaintiff was not disabled under the Social Security Act, since October 19, 2018, the alleged onset date. (R. at 30.)

## IV. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives [Plaintiff] of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## V.    ANALYSIS

In her Statement of Errors, Plaintiff sets forth two assignments of errors: first, that ALJ Sanders improperly reclassified Plaintiff's past relevant work; and second, that the Social Security Administration's structure is unconstitutional as it violates the separation of powers doctrine. (ECF No. 18 at PAGEID ## 589-599.) As discussed below, the Undersigned finds

8

Plaintiff's first assignment of error to be well-taken. This finding obviates the need for in-depth analysis of the remaining issue. Thus, the Undersigned need not, and does not, resolve the alternative basis that Plaintiff asserts supports reversal and remand.

For her first assignment of error, Plaintiff discusses her previous application for benefits. (ECF No. 18 at PAGEID ## 589-594.) Specifically, Plaintiff highlights the fact that the 2013 ALJ found that Plaintiff could not return to her past relevant work as an office clerk, but she could perform other sedentary work that existed in significant numbers in the national economy. (*Id.* (citing R. at 90-93).) Plaintiff then contrasts that finding with ALJ Sanders' finding in the subject decision, that Plaintiff *could* return to her past relevant work as a *service clerk*. (*Id.* (citing R. at 76).)[2] Plaintiff argues that "in order for a subsequent ALJ to alter the classification of an individual's past relevant work by a prior ALJ, there must be evidence of new and additional evidence, or changed circumstances, that would provide a basis for the alteration." (*Id.* at PAGEID # 591.) Plaintiff then submits that despite ALJ Sanders' findings to the contrary, "[t]he ALJ . . . [did] not identify any such new or additional evidence, and did not identify any changed circumstances either," and "[t]here is nothing in the record that demonstrates that [Plaintiff's] description of her job duties had changed." (*Id.* at PAGEID # 592.) Thus, Plaintiff concludes that "the ALJ's decision to reclassify the work was conclusory, arbitrary, and not supported by any actual evidence that identified a reason to alter [Plaintiff's] past relevant work." (*Id.* at PAGEID # 594.)

---

[2] This finding obviated the need for ALJ Sanders to analyze whether there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. *See* 20 C.F.R. §§ 404.1569a(a), 416.969a(a).

9

In response, the Commissioner submits that "[t]his case turns on whether the ALJ was required to accept the testimony of the prior vocational expert whose testimony she did not witness, and whose judgments she was not able to question, or, in the alternative, whether the ALJ was allowed to accept the testimony of the 2020 VE based on new facts and circumstances that were revealed at the hearing she presided over." (ECF No. 21 at PAGEID ## 617-618.)  The Commissioner then argues that under recent Sixth Circuit precedent, "even if there were not new and material evidence, the 2013 ALJ's findings [were] not binding on the 2020 ALJ," but here "there [are] significant evidence and changed circumstances demonstrating why . . . the 2020 VE properly determined that Plaintiff had past relevant work as a sedentary level service clerk." (*Id.* at PAGEID # 619.)

In reply, Plaintiff submits that this issue "boils down to whether the ALJ was justified in reclassifying [Plaintiff's] past relevant work." (ECF No. 26 at PAGEID ## 668-670.)  Plaintiff also contends that "the Commissioner is admitting that the ALJ was wrong," and that "[t]he Commissioner's entire argument here is nothing more than *post hoc* rationalization." (*Id.* at PAGEID # 669.)  Plaintiff concludes that "[i]nstead of admitting the ALJ's [error] . . . the Commissioner is attempting to substitute her own rationale that directly conflicts with the ALJ's own reasoning." (*Id.* at PAGEID # 670.)

As a preliminary matter, as both parties are well aware, the United States Court of Appeals for the Sixth Circuit previously has held that principles of res judicata apply to both claimants and the Commissioner in Social Security cases.  *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 841–42 (6th Cir. 1997).  The *Drummond* Court specifically held that absent evidence of "changed circumstances" relating to a claimant's condition, "a subsequent ALJ is bound by the findings of a previous ALJ." *Id.* at 842.  Applying this approach, the *Drummond*

10

Court concluded that an ALJ was bound by a previous ALJ's determination that the claimant retained the RFC to perform sedentary work because evidence did not indicate that the claimant's condition had improved. *Id.* at 843. Following *Drummond*, the Social Security Administration issued Acquiescence Ruling 98-4(6), which provides, in pertinent part, as follows:

> **[W]hen adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision** by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period **unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding**.

AR 98-4(6), 1998 WL 283902, at *3 (June 1, 1998) (emphasis added); *see also Blankenship v. Comm'r of Soc. Sec.*, 624 F. App'x 419, 425 (6th Cir. 2015) ("Read together, *Drummond* and Acquiescence Ruling 98-4(6) clearly establish that a subsequent ALJ is bound by the legal and factual findings of a prior ALJ unless the claimant presents new and material evidence that there has been either a change in the law or a change in the claimant's condition.").

Thereafter, as noted by the Commissioner, the Sixth Circuit clarified its decision in *Drummond*. *See Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929 (6th Cir. 2018). Specifically, in *Earley* the Sixth Circuit explained that principles of "consistency between proceedings and finality with respect to resolved applications" protected by *Drummond* "do not prevent the agency from giving a fresh look to a new application containing new evidence or satisfying a new regulatory threshold that covers a new period of alleged disability while being mindful of past rulings and the record in prior proceedings." *Id.* at 931. The Court went on to specifically reject the Social Security Administration's argument that "[i]n reviewing a second application by the same individual, . . . the administrative law judge should completely ignore earlier findings and applications" because "[f]resh review is not blind review." *Id.* at 934. In short, the Sixth

11

Circuit therefore found that "it is fair for an administrative law judge to take the view that, absent new and additional evidence, the first administrative law judge's findings are a legitimate, albeit not binding, consideration in reviewing a second application" and that a "ALJ should have another opportunity to review the application under the correct standard." *Id.* at 933–34.

As a threshold matter, the Court agrees with the Commissioner that the 2013 ALJ's findings were not binding on ALJ Sanders in the subject decision. At the same time, however, because "fresh review is not blind review," ALJ Sanders could not disregard the 2013 ALJ's findings altogether. *Earley*, 893 F.3d at 934. But that is what happened, as ALJ Sanders completely overlooked the 2013 ALJ's findings as to Plaintiff's past relevant work. In doing so, ALJ Sanders lost sight of *Earley*'s driving principle – fairness to the applicant – and committed reversible error. *Harris v. Comm'r of Soc. Sec.*, No. 2:20-CV-4356, 2021 WL 3615721, at *4 (S.D. Ohio Aug. 16, 2021) ("Courts applying the 'fresh look' test must do so with consideration for the underlying principle animating *Earley*: fairness to the applicant.") (citing *Ferrell v. Berryhill*, No. 1:16-CV-00050, 2019 WL 2077501, at *5 (E.D. Tenn. May 10, 2019) (explaining that "the point" of *Earley* is fairness to the applicant)); *Jones v. Comm'r of Soc. Sec.*, No. 2:20-CV-3844, 2021 WL 3204499, at *5 (S.D. Ohio July 29, 2021) (same).

In the subject decision, ALJ Sanders disregarded the 2013 ALJ's finding of Plaintiff's past relevant work as an "office clerk," and instead only summarily noted that "[t]he current [VE] disagreed with the classification of the prior position of office clerk, finding the position was better classified as a service clerk." (R. at 15.) Such a conclusory finding does not constitute new or additional evidence, nor does it reflect a change in any applicable regulation. While ALJ Sanders notes that she "accepted the testimony of the subsequent [VE] who had access to additional evidence, including additional [Plaintiff] testimony," ALJ Sanders fails to

12

discuss what new or additional testimony existed regarding Plaintiff's past relevant work.  (R. at 15.)  And although ALJ Sanders stated that "the new and material evidence does warrant a deviation from the prior ALJ decision," her failure to discuss that evidence leaves her conclusion unsupported.  (*Id.*)

ALJ Sanders' unexplained decision to adopt the 2020 VE's classification of Plaintiff's prior relevant work, from a "light" position (office clerk) to a "sedentary" position (service clerk), compounds the problem given the 2020 VE's admission that they did not review the 2013 VE's classification prior to classifying Plaintiff's prior relevant work:

> Q: Okay. **Did you look at the job description of the *DOT* that was identified in the prior Administrative Law Judge decision?**  And basically I'm asking you why is yours different than the prior Administrative Law Judge decision?
>
> A: **No. I did not see that in the file**, the previous number.

(R. at 71 (emphasis added).)  This admission confirms that the 2020 VE completely overlooked the 2013 ALJ's classification of Plaintiff's past relevant work.  Accordingly, by relying on the 2020 VE's reclassification of Plaintiff's past relevant work without discussing any new or additional evidence supporting that reclassification, ALJ Sanders performed the type of "blind review" that the *Earley* Court expressly rejected.

The Undersigned also agrees with Plaintiff that ALJ Sanders' error was not harmless.  As Plaintiff correctly observes, "had the past relevant work not been reclassified as a service clerk, then it would still have been considered office clerk, which is a light level position," so Plaintiff "would have been unable to perform her past relevant work."  (ECF No. 18 at PAGEID # 594.)  This was the basis on which ALJ Sanders denied Plaintiff's application, as ALJ Sanders did not discuss whether there are jobs that exist in significant numbers in the national economy that

13

Plaintiff can perform. Under these circumstances, the Undersigned agrees with Plaintiff that "[t]he classification of [Plaintiff's] past relevant work is determinative of disability" in this case. (*Id.*) Plaintiff has therefore met her burden of demonstrating that ALJ Sanders' error in this case was not harmless.[3] *Hague v. Comm'r of Soc. Sec.*, No. 2:18-CV-419, 2019 WL 4071718, at *3 (S.D. Ohio Aug. 28, 2019) ("It is the burden of the plaintiff to prove that any error was not harmless.").

In the Opposition brief, the Commissioner appears to recognize the flaws in ALJ Sanders' decision. Specifically, the Commissioner submits that ALJ Sanders was actually referring to a job Plaintiff had after 2013, and argues that "given [Plaintiff's] new testimony in 2020, it made sense that the 2020 VE classified [Plaintiff's post-2013 job] as a sedentary service clerk position rather than a light office clerk job." (ECF No. 21 at PAGEID ## 619-620.) The Undersigned rejects this strained reading of the ALJ's decision for multiple reasons, the chief of which being that ALJ Sanders expressly found that she was basing her decision on Plaintiff's pre-2013 work history:

> Here, the undersigned finds [Plaintiff's] position of service clerk past relevant work. [Plaintiff] held this position within the past 15 years. [Plaintiff] was a service clerk (previously classified as an office clerk) when working for Glass Guru of Central Ohio. **[Plaintiff] held this position during 2011**, which was within the past 15 years. The position was classified as semiskilled and [Plaintiff] held the position longer than three months, which is long enough to learn the job. [Plaintiff] performed this work at the substantial gainful activity level. The record supports [Plaintiff] earned $5,973.50 from the company (Exhibit B8D). The prior ALJ determined this position was relevant and **[Plaintiff] previously reported holding this position from August 2011 through November 2011**, at least four months in duration. She had previously reported earning $13.00 per hour and working full time at the job while she held the position. The threshold for substantial gainful activity for nonblind individuals during 2011 was $1,000 per month. Here, **[Plaintiff's] average earnings during 2011 for the company where she**

---

[3] The Court observes that the Commissioner did not rebut Plaintiff's harmless error argument in their Opposition brief. (*See* ECF No. 21.)

> **performed the work of service clerk exceeded the substantial gainful activity level. Thus, the undersigned finds the position of service clerk met the requirements of past relevant work in accordance with SSR 82-62**.

(R. at 29 (emphasis added).) Accordingly, the Undersigned declines to entertain any argument that Plaintiff's post-2013 work history impacted ALJ Sanders' analysis in the least, regardless of whether the Undersigned believes that would "ma[k]e sense."

At the end of the day, it is the ALJ's responsibility to allow the Court to trace the path of her reasoning without guesswork. *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011) ("[T]he ALJ's decision still must say enough 'to allow the appellate court to trace the path of his reasoning.'") (quoting *Diaz v. Chater,* 55 F.3d 300, 307 (7th Cir. 1995)). To this end, the Commissioner's other arguments that "the reason for the new job classification . . . was based on Plaintiff's testimony about a new job," and "it was [Plaintiff's job from 2013-2016] that the VE classified as that of a sedentary 'service clerk,'" ECF No. 21 at PAGEID ## 621-622, are unpersuasive. *Canty v. Comm'r of Soc. Sec.*, No. 2:15-CV-2221, 2016 WL 5957679, at *3 (S.D. Ohio Oct. 14, 2016) ("The Court cannot uphold an ALJ's decision, even if there is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result.") (internal quotation and citations omitted); *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 192 (6th Cir. 2009) ("Where an 'administrative agency alone is authorized to make' a particular determination, the reviewing court 'must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis.'") (quoting *S.E.C. v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

15

The Court cannot, and will not, engage in hypothetical discussions regarding whether it would have "made sense" for ALJ Sanders to classify Plaintiff's post-2013 work as sedentary, because that is plainly not what ALJ Sanders intended to do. (R. at 29.) Rather, the Court is tasked with determining whether the ALJ evaluated Plaintiff's claim in a reasonable fashion, consistent with the applicable legal standards. *Rabbers*, 582 F.3d at   Because the Undersigned finds that ALJ Sanders failed to do so here, Plaintiff's first statement of error is well taken.

## VI. CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that the ALJ's decision denying benefits was not supported by substantial evidence and was not made pursuant to proper legal standards. Based on the foregoing, it is therefore **RECOMMENDED** that the decision of the Commissioner be **REVERSED** and that this action be **REMANDED** under Sentence Four of § 405(g).

## VII. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report an\d Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate

16

judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).


Date:   February 4, 2022                             /s/ *Elizabeth A. Preston Deavers*
                                                                    Elizabeth A. Preston Deavers
                                                                    United States Magistrate Judge